# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| In re: TRANSPERFECT GLOBAL, INC. | ) | C.A. No. 9700-CB |
|  | ) |  |
|  | ) |  |
| ELIZABETH ELTING, | ) |  |
|     Petitioner, | ) |  |
|  | ) |  |
|     v. | ) | C.A. No. 10449-CB |
|  | ) |  |
| PHILIP R. SHAWE and SHIRLEY SHAWE, | ) |  |
|     Respondents, | ) |  |
|  | ) |  |
|     and | ) |  |
|  | ) |  |
| TRANSPERFECT GLOBAL, INC., | ) |  |
|     Nominal Party. | ) |  |

## ORDER OF DISCHARGE

WHEREAS, at the request of the Court of Chancery of the State of Delaware, Robert B. Pincus volunteered to serve as the Custodian of TransPerfect Global, Inc. (the "Company" or "TPG"), for purposes of overseeing a Court-ordered sale of the Company;

WHEREAS, at the time of his appointment as Custodian, Mr. Pincus was a partner of Skadden, Arps, Slate, Meagher & Flom LLP;

WHEREAS, the Court of Chancery, in its order directing the sale of the Company, recognized that Mr. Pincus "has significant experience negotiating and overseeing corporate transactions, including mergers and acquisitions and other forms of corporate transactions";

WHEREAS, in 2018, the Court of Chancery approved the proposed sale of the Company, the Supreme Court of the State of Delaware affirmed that decision, and the sale was consummated;

WHEREAS, in its opinion approving the sale, the Court of Chancery stated that Mr. Pincus "deftly and firmly handled a challenging assignment to create a competitive dynamic" that maximized the value for the stockholders while simultaneously preserved the Company as a going concern;

WHEREAS, following the consummation of the sale, Mr. Pincus, in his capacity as Custodian, remained responsible for certain post-closing events, including certain tax matters and a post-closing purchase price adjustment process;

WHEREAS, Mr. Pincus, who retired from Skadden, Arps, Slate, Meagher & Flom LLP in 2018, has now completed the sale and post-closing duties related to the sale;

WHEREAS, Mr. Pincus has respectfully moved the Court of Chancery to approve an Order of Discharge;

WHEREAS, as part of and following any discharge, it is essential that Mr. Pincus be assured of a continuation of the "judicial immunity and robust indemnification and advancement rights" (as described in the Court's opinion approving the sale) that he received in the sale order and other orders issued by the Court of Chancery;

2

WHEREAS, this Order serves to discharge Mr. Pincus as Custodian and to assure that he and his advisors continue to receive, following the discharge, protections afforded them under various Court orders, agreements and Delaware law, notwithstanding the fact that Mr. Pincus will no longer serve in the capacity as Custodian;

\* \* \*

WHEREAS, on March 9, 2015, the Court entered an order (the "March 9 Order") appointing Mr. Pincus as custodian of the Company for purposes of serving as a mediator to assist Elizabeth Elting and Philip R. Shawe in negotiating a resolution of the disputes giving rise to the above-referenced actions (the "Actions");

WHEREAS, the March 9 Order provided, among other things, that "[t]he Custodian and the law firm of Skadden, Arps, Slate, Meagher & Flom LLP, its partners and employees (collectively, 'Skadden') are entitled to judicial immunity and to be indemnified by TPG, in each case, to the fullest extent permitted by law";

WHEREAS, on August 13, 2015, the Court issued an opinion and an order (the "August 13 Opinion" and the "August 13 Order," respectively) in the Actions, which, among other things, granted Ms. Elting's petitions under 8 *Del. C.* §§ 226(a)(1) and (a)(2), denied Ms. Elting's demand for equitable dissolution of the Company, appointed Mr. Pincus to serve as Custodian of the Company for purposes

3

of overseeing a judicially ordered sale of the Company, and directed the Custodian to provide a report to the Court concerning a proposed plan of sale;

WHEREAS, the August 13 Order also appointed Mr. Pincus to serve as a third director of the Company with the authority to vote on certain matters on which Ms. Elting and Mr. Shawe could not agree and which rose to the level that Mr. Pincus deemed significant to managing the Company's business and affairs;

WHEREAS, the August 13 Order provided, among other things, that "[t]he Custodian and the law firm of Skadden, Arps, Slate, Meagher & Flom LLP, its partners and employees (collectively, 'Skadden') are entitled to judicial immunity and to be indemnified by TPG, in each case, to the fullest extent permitted by law";

WHEREAS, the August 13 Order also provided that "[t]he Custodian may retain counsel (including Skadden) or other advisors to assist him in the performance of his duties under this Order";

WHEREAS, on July 18, 2016, the Court entered an Order for the Custodian to Undertake a Sale Process (the "Sale Order"), which, among other things, granted the Custodian "full and exclusive authority to . . . implement (subject to Court approval of the recommendation) a Sale Transaction," to "act through and in the name of the Company to carry out his duties," and to "execute and deliver (or cause to be executed and delivered) on behalf of the Company and its stockholders (i) a definitive sale agreement, a merger agreement, a stock purchase agreement or

4

any other form of similar agreement . . . and (ii) any other document related to the Definitive Sale Agreement (and the transactions contemplated therein), including, without limitation, contracts, deeds, other documents of title, and regulatory, administrative, and governmental filings . . . .";

WHEREAS, the Sale Order provided that "[t]he Custodian is authorized to utilize the services of Skadden, Arps, Slate, Meagher & Flom LLP (the 'Firm') and may use attorneys from the Firm as counsel";

WHEREAS, the Sale Order also provided that "[t]he Custodian, the Firm, and the Firm's partners and employees (together with the Firm, 'Skadden') are entitled to judicial immunity and to be indemnified by the Company (or its successor in interest), in each case, to the fullest extent permitted by law";

WHEREAS, on February 13, 2017, the Delaware Supreme Court affirmed the August 13 Opinion, the August 13 Order and the Sale Order;

WHEREAS, on November 19, 2017, the Company, Mr. Pincus (solely in his capacity as custodian of the Company (pursuant to the Sale Order) and on behalf of the Seller (pursuant to the Sale Order)), Ms. Elting (the "Seller"), PRS Capital LLC, Mr. Shawe and Shirley Shawe (solely for purposes of specific provisions) entered into a Securities Purchase Agreement (the "Securities Purchase Agreement");

WHEREAS, on February 15, 2018, the Court issued an opinion and an order (the "February 15 Opinion" and the "February 15 Order," respectively), which, among other things, approved the Securities Purchase Agreement and related agreements (including a form of Escrow Agreement);

WHEREAS, the Securities Purchase Agreement, related agreements (including the Escrow Agreement, as executed), the Letter Agreement, dated as of May 7, 2018, by and between the Custodian, the Company, the Seller, PRS Capital LLC, Mr. Shawe and Shirley Shawe, and the Director Indemnification Agreement dated as of August 19, 2015, by and between the Company and Robert B. Pincus, are referred to herein as the "Agreements";

WHEREAS, an appeal was taken from the February 15 Opinion and the February 15 Order, and on May 3, 2018, the Delaware Supreme Court affirmed the February 15 Opinion and the February 15 Order;

WHEREAS, the February 15 Order provided, among other things, that "[w]ithout limitation, the Custodian and Skadden, Arps, Slate, Meagher & Flom LLP (and its partners and employees) are entitled to judicial immunity and to be indemnified by the Company (or its successor in interest), in each case, to the fullest extent permitted by Law";

WHEREAS, the transactions contemplated by the Agreements were consummated on May 7, 2018 (the "Closing");

WHEREAS, on May 7, 2018, Mr. Pincus resigned as a director of the Company and from all positions he held as a director of any of the Company's subsidiaries;

WHEREAS, except in connection with certain limited, post-Closing matters, all duties, responsibilities and obligations imposed on the Custodian by the Agreements or by orders of the Court, including pursuant to the March 9 Order, the August 13 Order, the Sale Order and the February 15 Order (collectively, the "Orders"), have been satisfied and extinguished, or are otherwise no longer relevant in light of the occurrence of the Closing;

WHEREAS, certain of these post-Closing custodial duties include, but are not limited to, obligations imposed by the Agreements, service in connection with disputes arising from or relating to actions contemplated by the Sale Order, decision-making and actions related to releases of funds from escrow accounts and enforcement of indemnification rights, releases and judicial immunity rights;

WHEREAS, the February 15 Order provides that "[t]he rights and authority granted to the Custodian and the duties and responsibilities of all parties to the Actions under the Sale Order and all other orders of the Court in Civil Action Nos. 9700-CB and 10449-CB shall remain in full force and effect in accordance with their terms until otherwise modified or discharged by the Court";

WHEREAS, the purpose of this Order of Discharge is to conclude, terminate and extinguish Mr. Pincus's duties, responsibilities and obligations as Custodian of the Company;

WHEREAS, the purpose of this Order also is to ensure that, after the entry of this Order, Mr. Pincus, in his individual capacity (and when he is no longer serving in his capacity as Custodian), has (i) all of, and not less than all of, the protections (including, without limitation, judicial immunity and indemnification) afforded under the Orders, the Agreements and Delaware law that Mr. Pincus, in his capacity as Custodian or in his individual capacity, had prior to the entry of this Order, and (ii) the rights set forth herein in furtherance of such protections;

WHEREAS, the purpose of this Order also is to ensure that, after the entry of this Order, Skadden, Arps, Slate, Meagher & Flom LLP and its partners and employees have (i) all of, and not less than all of, the protections (including, without limitation, judicial immunity and indemnification) afforded under the Orders, the Agreements and Delaware law that Skadden, Arps, Slate, Meagher & Flom LLP and its partners and employees had prior to the entry of this Order, and (ii) the rights set forth herein in furtherance of such protections;

WHEREAS, this Order does not affect the finality of the February 15 Order or the Delaware Supreme Court's affirmance thereof, or of any order of the Court or of the Delaware Supreme Court, except as expressly set forth herein; and

8

WHEREAS, the Court has considered this Order submitted by the Custodian.

NOW, THEREFORE, IT IS HEREBY ORDERED this 14th day of April, 2021, that:

1. Mr. Pincus is hereby discharged from any and all of his duties, responsibilities and obligations as the Custodian of the Company (including, but not limited to, the duties, responsibilities and obligations set forth in the Court's Orders and Agreements, and those related to his service as a director of the Company or any of the Company's subsidiaries or affiliates), which duties, responsibilities and obligations shall be deemed concluded, terminated and extinguished, and Mr. Pincus shall no longer serve in the judicially ordered capacity of Custodian of the Company; and, in furtherance of the foregoing, any and all duties, responsibilities and obligations that Mr. Pincus or any of his advisors or consultants have or may have under the Securities Purchase Agreement, including the performance of any act that is, would be or could be required of any of them, are hereby terminated and extinguished.

2. Notwithstanding anything in this Order or elsewhere that could be construed to the contrary, after the entry of this Order, (a) the Escrow Funds, as provided for in the Securities Purchase Agreement and governed by the Escrow Agreement, shall remain available to Mr. Pincus, pursuant to the terms of the Escrow

9

Agreement (as modified in accordance with this Order), as a "non-exclusive source of funds for securing . . . amounts payable to the Custodian or his advisors, including, without limitation, investment banking, legal and accounting fees and expenses for services performed prior to or after the Closing," and (b) the Escrow Agreement shall be amended or modified such that Mr. Pincus may enforce it and be entitled to the Escrow Funds, in his individual capacity (and when he is no longer serving in a capacity as Custodian), to the same extent as he was entitled to enforce the Escrow Agreement and to be entitled to the Escrow Funds in his capacity as Custodian prior to the entry of this Order, including, without limitation, with respect to the distribution of the Escrow Funds to the Buyer and the Seller in accordance with Section 2.2 of the Escrow Agreement. The Company and any of its successors or predecessors, and Mr. Shawe, and any of their respective officers, directors, employees, agents, attorneys, and all other persons under the direction or control of any of the foregoing, and Ms. Elting shall promptly and fully cooperate with Mr. Pincus and his advisors to achieve any amendments or modifications to any Agreements or any other document that are desirable, necessary or required to achieve the purposes of this Paragraph 2.

3.     Notwithstanding anything in this Order or elsewhere that could be construed to the contrary, after the entry of this Order, Mr. Pincus, in his individual capacity (and when he is no longer serving in a capacity as Custodian), shall have

all of, and not less than all of, the protections, including, without limitation, rights to indemnification, fees or expenses, releases, limitations on liability and judicial immunity, granted or afforded under the Orders, the Agreements and Delaware law, that (in reference to such protections) existed prior to the entry of this Order and were granted to or afforded to Mr. Pincus in any capacity (including as Custodian); and, in furtherance of this, the Orders and the Agreements shall be deemed modified or amended such that Mr. Pincus has standing to and may enforce them, for the purposes of this Paragraph 3 and this Order, in his individual capacity (and when he is no longer serving in a capacity as Custodian) to the same extent. In furtherance of the foregoing (and without limiting it), after the entry of this Order, Mr. Pincus, in his individual capacity (and when he is no longer serving in a capacity as Custodian), shall be entitled to implement, effectuate and enforce the following provisions of the Securities Purchase Agreement, and such document and provisions shall be deemed modified or amended such that Mr. Pincus has standing to and may enforce them in his individual capacity (and when he is no longer serving in a capacity as Custodian) to the same extent: any and all provisions that afford (or in any way facilitate affording) Mr. Pincus, in any capacity, protections of any nature whatsoever (including, without limitation, protection from harm, damages, costs, injury, liabilities, fees and expenses (including, without limitation, attorneys' fees and experts' fees)), including, without limitation, Section 2.4 ("*Escrow*

11

*Agreement*"), Section 2.6 ("*Parent Guaranty*"), Section 4.22 ("*Disclaimer*"), Section 7.5 ("*Continuation of Indemnification*"), Section 7.6 ("*Directors and Officers Insurance*"), Section 8.2 ("*Release and Non-Disparagement; Settlement of Litigation*"), Section 8.3 ("*Appropriate Action; Consents; Filings*"), Section 8.6(c) ("*Consultation with Advisors*"), Section 8.6(d) ("*Limitation on Liability*"), Section 8.6(e) ("*Indemnification*"), Section 8.6(f) ("*No Implied Duties or Obligations*"), Section 12.11 ("*Governing Law; Jurisdiction Waiver of Jury Trial*"), Section 12.14 ("*Costs of Dispute*"), Section 12.16 ("*Non-Recourse*") and Section 12.17 ("*Certain Legal Representation Matters*"). For the avoidance of doubt, nothing in this paragraph modifies the duration of any of the provisions in the Securities Purchase Agreement.

4.     After the entry of this Order, Skadden shall have all of, and not less than all of, the protections, including, without limitation, rights to indemnification, fees or expenses, releases, limitations on liability and judicial immunity, granted or afforded under the Orders, the Agreements and Delaware law, that (in reference to such protections) existed prior to this Order and were granted or afforded to Skadden, Arps, Slate, Meagher & Flom LLP (or its partners, employees or affiliates); and, in furtherance of this, the Orders and the Agreements shall be deemed modified or amended such that Skadden has standing to and may enforce them, for the purposes of this Paragraph 4 and this Order, to the same extent.

5.    After the entry of this Order, all advisors and consultants of Mr. Pincus (in his capacity as Custodian) shall have all of, and not less than all of, the protections, including, without limitation, rights to indemnification, fees or expenses, releases, and limitations on liability, granted or afforded under the Orders, the Agreements and Delaware law, that (in reference to such protections) existed prior to the entry of this Order and were granted or afforded to them; and, in furtherance of this, the Orders and the Agreements shall be deemed modified or amended such that these advisors and consultants have standing to and may enforce them, for the purposes of this Paragraph 5 and this Order, to the same extent.

6.    Nothing in this Order prevents Mr. Pincus from electing to seek a release of funds from the Escrow Funds, in lieu of a payment from the Company, for any amounts that might be due him or his advisors, in accordance with Paragraph 2 of this Order.  Mr. Pincus may direct that any payments required to be made by the Company, or funds required to be released from the Escrow Funds, be delivered directly to him or to his advisors, as the case may be.

7.    Mr. Pincus shall be entitled to petition the Court in the future for purposes of obtaining payment of any amounts due to Mr. Pincus or his attorneys or other advisors (including Skadden, Arps, Slate, Meagher & Flom LLP) in connection with his rights arising out of this Order, the Orders, the Agreements or Delaware law, including, without limitation, fees and expenses (including, without limitation,

13

attorneys' fees and experts' fees) and other amounts due under indemnification or payment obligations. Before filing any such petition, Mr. Pincus and/or his advisors shall (a) provide to the Company a copy of a Billing Record containing the information specified in paragraph 3(a) of the Second Order Concerning Custodian's Motion for Civil Contempt (Dkt. 1399), as modified on January 13, 2021 (Dkt. 1559) (the "Second Order"), with respect to the payment sought, and an affidavit containing the information described during the hearing held on March 2, 2021 (Dkt. 1595, at 137-38) and (b) attempt to resolve any dispute over the fees and expenses sought by engaging in good faith discussions with Company within fifteen business days of providing this information. If the matter is not resolved within such fifteen-day period, Mr. Pincus may file a petition in accordance with the process set forth in paragraph 3 of the Second Order), which also must include a copy of the affidavit provided to the Company.

8.      Mr. Pincus may continue to retain in the future attorneys and other advisors, including Skadden, as he deems reasonably necessary to assist him with respect to any matter arising out of, resulting from, based upon or related to his past service as Custodian of the Company, including any role as a director that he held with the Company or any of its subsidiaries.

9.      Without limiting any protections or releases set forth in the Orders and the Agreements, the Company (and any successor in interest or affiliate), Ms. Elting,

14

Mr. Shawe, Shirley Shawe and their respective past, present and future agents, heirs, executors, family members, spouses, administrators, estates, beneficiaries, assigns, advisors, representatives (including members or managers, officers, directors, affiliates, parents, subsidiaries, advisors, attorneys, and any person acting on behalf of, at the direction of or in concert or coordination with any of them) ("Releasors") shall be deemed, by operation of law and of this Order and the Orders, to the fullest extent permitted by law, to fully release, forever discharge and covenant not to sue, directly or indirectly or on behalf of any third party, Mr. Pincus, Skadden, Arps, Slate, Meagher & Flom LLP, and any other advisors, agents and representatives of Mr. Pincus (including, without limitation, Credit Suisse Securities (USA) LLC, Alvarez and Marsal North America LLC, and Thomas Pennell), and each of their respective predecessors, successors, and assigns, and all of their respective past, present and future agents, managers, members, directors, officers, partners, principals, employees, representatives, insurers, attorneys, consultants, accountants, auditors, stockholders, equity holders, parent companies, subsidiaries, affiliates, and joint venturers, and each of their respective estates, executors, trustees, heirs, and assigns, from and with respect to any and all past, present, direct, indirect, individual, class, representative and derivative liability, claims, demands, rights, actions, charges, causes of action, agreements, suits, liens, accounts, judgments, remedies, promises, obligations, damages, debts, losses, costs, fees and expenses (including

15

attorneys' fees and experts' fees), or liabilities of every kind or nature whatsoever, in law or in equity, including pursuant to any state, federal or foreign law, whether fixed or contingent, known or unknown, suspected or unsuspected, disclosed or undisclosed, liquidated or unliquidated, matured or unmatured, apparent or unapparent, accrued or unaccrued, whenever arising, which Releasors ever had, now have or which they hereinafter can, shall or may have by reason of any matter, cause or thing, regarding any acts, events, facts, matters, transactions, occurrences, statements, representations or any other matter whatsoever, arising out of, resulting from, based upon or related to, directly or indirectly, Mr. Pincus's service as Custodian of the Company (and for the avoidance of doubt, any role as director that he held with the Company or any of its subsidiaries or affiliates) (or any act or omission performed or omitted by Mr. Pincus or Skadden in relation thereto) and any of the Orders and any matters contemplated thereby.

10. Releasors shall be forever barred, enjoined and restrained by operation of this Order and the Orders from initiating or pursuing, or causing or acting in concert with any other person or entity to initiate or pursue, any claim, action, suit or proceeding, of any nature whatsoever, arising out of, resulting from or relating to, directly or indirectly, Mr. Pincus's service as Custodian of the Company (and for the avoidance of doubt, any role as director that he held with the Company or any of its subsidiaries or affiliates) (or any act or omission performed or omitted by Mr. Pincus

16

or Skadden in relation thereto) and any of the Orders and any matters contemplated thereby.

11. The Court retains continuing and exclusive jurisdiction over the parties to the Actions (a) for all matters relating to the Actions, including the administration, interpretation, effectuation or enforcement of the Agreements and all orders of the Court in Civil Actions No. 9700-CB and 10449-CB, and (b) to resolve any disputes between or among the parties relating to Tax Proceedings, as that term is defined in the Securities Purchase Agreement.

12. There being no just reason for delay, final judgment is entered under Court of Chancery Rule 54(b) with respect to the granting of this Order of Discharge.

Dated: April 14, 2021

Chancellor Bouchard

17